IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| GERALD ALLEN GREGG, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-1544 |
| | ) | Judge Terrence F. McVerry/ |
| JOHN C. PETTIT, former District Attorney | ) | Magistrate Judge Amy Reynolds Hay |
| of Washington County, in his official and | ) | |
| individual capacities; JOSEPH PELZER, | ) | |
| Warden of the Washington County | ) | |
| Correctional Facility, in his official and | ) | |
| individual capacities; JAMES | ) | |
| McELHANEY, Detective for the | ) | |
| Pennsylvania State Police, in his | ) | |
| professional and individual capacities; | ) | |
| AS-YET-UNKNOWN DEFENDANT(S); | ) | |
| MICHAEL LUCAS, Assistant District | ) | |
| Attorney of Washington County, in his | ) | |
| professional and individual capacities; | ) | |
| ANTHONY POPECK, Investigator for | ) | |
| Washington County DA's Office, in his | ) | |
| professional and individual capacities; | ) | |
| TIM WARCO, Washington County | ) | |
| Coroner, in his official and individual | ) | |
| capacities; PATRICK LEARY, Trooper | ) | |
| for Pennsylvania State Police, in his | ) | |
| professional and individual capacities; | ) | |
| PENNSYLVANIA STATE POLICE | ) | |
| WASHINGTON COUNTY TROOP B; | ) | |
| WASHINGTON COUNTY | ) | |
| CORRECTIONAL FACILITY; | ) | |
| WASHINGTON COUNTY, | ) | |
| PENNSYLVANIA c/o BOARD OF | ) | |
| COMMISSIONERS; WASHINGTON | ) | |
| COUNTY OFFICE OF THE DISTRICT | ) | |
| ATTORNEY, | ) | |
| | ) | |
| Defendants | ) | Re Dkt. Nos. [27], [29] & [31] |

**REPORT AND RECOMMENDATION**

## I.    <u>RECOMMENDATION</u>

It is respectfully recommended that Defendants' motions to dismiss be granted and that all of the federal law claims and most of the state law claims be dismissed for failure to state a claim upon which relief can be granted. It is further recommended that the District Court decline to exercise supplemental jurisdiction over the state law claims against Defendants Pelzer and Warco.

## II.    <u>REPORT</u>

Gerald Allen Gregg ("Plaintiff") was a state prisoner at the time of commencing this suit. In the original complaint, Plaintiff named three defendants by name, i.e., John Petit, the former District Attorney of Washington County, Joseph Pelzer, the Warden of the Washington County Correctional Facility, i.e., the County Jail, and, James McElhaney, a Pennsylvania State Trooper. Plaintiff also included "other AS-YET-UNKNOWN DEFENDANT(S)." Subsequently, Plaintiff filed an amended complaint in which he added the following Defendants: Michael Lucas, an Assistant District Attorney for Washington County; Anthony Popeck, an investigator for the Washington County District Attorney's Office; Tim Warco, the Washington County Coroner; Patrick Leary, a Pennsylvania State Trooper; the "Pennsylvania State Police Washington County Troop B;" the "Washington County Correctional Facility;" "Washington County, Pennsylvania;" the "Washington County Office of The District Attorney;" the Washington County Commissioners and "other AS-YET-UNKNOWN DEFENDANTS." Dkt. [8]. In that amended complaint, which is the operative complaint, Plaintiff complained of two arrests and prosecutions thereafter.

On November 21, 2003, Plaintiff was arrested for the November 4, 2003 murders of two persons. Plaintiff claims that he was falsely arrested and was held without bail for 712 days pending trial until he was acquitted of the murders on November 9, 2005. Plaintiff complains that the Defendants maliciously conspired to prosecute and convict Plaintiff for a crime he did not commit. Dkt. [8] at 4, ¶ 17. He alleges that Defendants Petit, McElhaney, Leary and Popeck manufactured evidence that falsely implicated Plaintiff as the perpetrator of the two murders. These wrongful actions included allegedly manipulating multiple witnesses to falsely implicate Plaintiff. Id., at ¶ 18.

Plaintiff further alleges that while he was incarcerated during the 712 days at the Washington County Correctional Facility, he endured cruel and unusual punishment, including being "denied access to his defense attorney, denied access to religious services, placed in solitary confinement for lengthy periods," etc. Id., at ¶ 19.

As to the second arrest, Plaintiff alleges that on November 9, 2005, after he was acquitted by the jury of the two murders, and as he was about to be released from custody, Defendants McElhaney and Leary arrested Plaintiff for "other charges that stemmed from false testimony of one of the witnesses during" Plaintiff's murder trial. Plaintiff made bail on the new charges and was eventually released. Id., at ¶ 20.

Finally, in April 2007, Plaintiff plead guilty regarding the November 2005 charges and was sentenced to serve 1 to 4 years of incarceration. Plaintiff was then incarcerated in SCI-Mercer, apparently until recently. Dkt. [35] (change of address to private residence).

Plaintiff alleges that the foregoing violated his federal rights and in addition constituted state law torts. He lists seven "counts" in his amended complaint. In the First Count, Plaintiff

claims that the actions of the defendants amounted to malicious prosecution by manufacturing evidence against him, denying him due process and denying him access to his attorney and pastor during incarceration. Plaintiff also contends that the Defendants were deliberately indifferent to the inadequacies in the policies and procedures of the Washington County Correctional Facility. But Plaintiff only specifies that the policies are inadequate to assure safe confinement of inmates and that there is a policy to punish inmates for lack of cooperation with the District Attorney. Dkt. [8] at 5, ¶25. These claims are purported made under Section 1983.

In the Second Count, Plaintiff alleges that the foregoing establishes a conspiracy in violation of 42 U.S.C. § 1985(3) and of Section 1983.

In the Third Count, Plaintiff alleges that all of the Defendants had the power to prevent the violation of Plaintiff's rights but failed to do so which again amounts to an alleged violation of federal law.

In the Fourth Count, Plaintiff alleges that his 712 days of incarceration following the November 21, 2003 arrest constituted false imprisonment in violation of the constitution and he makes this claim under Section 1983

In the Fifth Count, Plaintiff alleges that the actions of the defendants amounted to the state tort of malicious abuse of process in relation to the double murder charges. Dkt. [8] at 7, ¶¶ 42-43.

In Count 6, Plaintiff alleges that the Defendants initiated both criminal proceedings against him with malice and that such constitutes the state tort of malicious prosecution.

In Count 7, Plaintiff alleges that the foregoing establishes that the defendants engaged in the state tort of intentional infliction of emotional distress.

Defendant Petit filed a motion to dismiss the operative complaint under Fed.R.Civ.P. 12(b)(6), Dkt. [27], and a brief in support, Dkt. [28]. Defendants Leary, McElhaney, and the Pennsylvania State Police (collectively "the State Police Defendants") also filed such a motion, Dkt. [29], and a brief in support, Dkt. [30]. Defendants Lucas, Popeck, Warco, Pelzer, the Washington County Correctional Facility, the Washington County District Attorney's Office and Washington County (collectively, "the County Defendants") also filed such a motion, Dkt. [31]. After twice being granted an extension of time, Plaintiff filed a single response to all three motions. Dkt. [38]. Defendant Petit filed a reply to Gregg's response, Dkt. [41], as did the County Defendants, Dkt. [42].

## A. Standard of Review and the PLRA

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[1] Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). Nevertheless, under the 12(b)(6) standard, a "court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir.

---

[1] Although Plaintiff and Defendant Petit utilized the Conley standard, Dkt. [38] at 3 and Dkt. [28] at 3, respectively, we must reject that standard as Twombly abrogated the Conley standard.

5

2001).  Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S.  265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6).  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).  In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004),  held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]"  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955,  1964-1965 (2007).  Or put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.

In addition, because Plaintiff was, at the time of the filing of this civil action,[2] a prisoner

and because he named governmental entities and employees of such entities, the screening

provisions of the Prisoner litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply

herein.[3]  The court's obligation to dismiss a complaint under the PLRA screening provisions is

not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203

F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not

relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its

dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez; Dare

v. U.S., CIV.A.06-115E, 2007 WL 1811198, *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx.

183 (3d Cir. 2008)

### B.  Discussion

#### 1.  Prosecutorial Immunity

---

[2]  See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day he files a civil action, the PLRA applies."); Colby v. Sarpy County, No. 4:01CV3130, 2006 WL 519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated, i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA applies to a case.").

[3]  The federal PLRA, in relevant part, added Section 1915A, entitled "Screening," to Title 28 U.S.C. to provide that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. (b) Grounds for dismissal– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint– (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;  or  (2) seeks monetary relief from a defendant who is immune from such relief."  The plain language of the statute referring to a "civil action" includes any suit brought in federal court even those which include supplemental state law claims, and permits federal courts to screen state law claims brought in the federal courts.  See, e.g., Horton v. Thompson, No. 02-C-0470-C, 2002 WL 32345677, at *9 (W.D. Wis. September 23, 2002)("If he fails to do so, [i.e., essentially amend his complaint to make clear what state law claims the prisoner is bringing] I will decline to exercise supplemental jurisdiction over any state law claims; if he responds as instructed, I will screen plaintiff's state law claims pursuant to 28 U.S.C. § 1915A.").  Here, this procedural juncture is as soon as practicable for the court to engage in its screening.

Both former District Attorney Petit and current Assistant District Attorney Michael Lucas raise the defense of absolute prosecutorial immunity as to all of the federal law claims, which they take to be Counts 1 to 5, because they assert all such claims seek to impose liability on them for their acts taken in instituting and prosecuting Plaintiff for crimes. Plaintiff does not contend otherwise. In fact, Plaintiff confirms that he seeks to hold the two prosecutor-defendants liable for their roles in initiating and prosecuting him. For example, in his response to the motions to dismiss, Plaintiff explains: "Plaintiff argues that the defendants listed in this claim robbed him of his rights by knowingly plotting, planning and executing a plan to send him to death row for a crime he did not commit. Also for continuing the malicious prosecution of him after a jury acquitted him of all charges associated with the Brilla and Brahler murder by rearresting him on more trumped up charges of lies and exaggeration told during the murder trial." Dkt. [38] at 6.

The Third Circuit has held that "[t]he decision to initiate a prosecution is at the core of a prosecutor's judicial role. A prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992)(citations omitted). Here, Plaintiff's allegations contained in the operative complaint are essentially that the District Attorney Petit and the Assistant District Attorney Lucas "maliciously conspired with all other . . . defendants to prosecute, convict and execute Plaintiff for a heinous crime he did not commit." Dkt. [8] at 4, ¶17. Hence, it is clear that these two defendants and the allegations of the complaint concerning them come within the shield of absolute prosecutorial immunity. See e.g., Rose v. Bartle, 871 F.2d 331, 345 (3d Cir. 1989) ("charges that the prosecutors induced witnesses to commit perjury are barred by the immunity doctrine") (quoting Heidelberg v. Hammer, 577 F.2d 429, 432 (7th

8

Cir. 1978)); <u>Jennings v. Shuman</u>, 567 F.2d 1213, 1221-22 (3d Cir. 1977) (citation omitted) ("[A] prosecutor is entitled to absolute immunity 'while performing his official duties' as a officer of the court, even if, in the performance of those duties, he is motivated by a corrupt or illegal intention."); <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993)("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial" enjoy absolute immunity); <u>Broam v. Bogan</u>, 320 F.3d 1023, 1030 (9th Cir. 2003)("A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages.").  Even the allegation of conspiracy between the two prosecutor-Defendants and the other defendants comes within a prosecutor's absolute immunity.  <u>Dory v. Ryan</u>, 25 F.3d 81, 83 (2d Cir. 1994)("absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include, for purposes of this case, allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because '[t]he immunity attaches to his function, not to the manner in which he performed it.' <u>Barrett v. United States</u>, 798 F.2d 565, 573 (2d Cir. 1986). . . . As much as the idea of a prosecutor conspiring to falsify evidence disturbs us . . . we recognize that there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties.");  <u>Davis v. Grusemeyer</u>, 996 F.2d 617, 628 n.20 (3d Cir. 1993)("engaging in a conspiracy to maliciously prosecute does not affect prosecutor's absolute immunity from liability for the damages resulting from the malicious prosecution")

(citing <u>Rose v. Bartle</u>, 871 F.2d 331, 347 (3d Cir. 1989)), <u>abrogation on other grounds recognized</u> <u>by</u>, <u>Knight v. Poritz</u>, 157 Fed.Appx. 481, 487 (3d Cir. 2005).

Tthe only argument Plaintiff makes in response to the invocation of absolute prosecutorial immunity is that the Civil Rights Act refers to "every person" which means that anyone who violates Section 1983, i.e., commits a violation of a person's federal civil rights, is liable and that Defendants Petit and Lucas cannot have immunity as a matter of law. Dkt. [38] at 5. Plaintiff is simply wrong on the law. Most of the cases that Plaintiff cites in support of his argument do not support the proposition that prosecutors cannot enjoy prosecutorial immunity. In fact, they support a contrary conclusion. <u>See</u>, <u>e.g.</u>, <u>Westberry v. Fisher</u>, 309 F.Supp. 12 (D. Maine 1970). Plaintiff quotes a headnote in <u>Westberry</u> for the proposition that "Governmental immunity is not a defense under (42 USC 1983) making liable every person who under color of state law deprives another person of his civil rights." Dkt. [38] at 6. In fact, the <u>Westberry</u> Court explicitly noted that "Section 1983 is cast in terms so broad as to indicate that governmental immunity can never be a defense in suits brought under that section. Nevertheless, despite the broad sweep of the statutory language, it has now been authoritatively determined that it was not the intention of Congress in enacting Section 1983 'to abolish wholesale all common-law immunities.' . . . And the lower federal courts have extended this immunity to a wide variety of judicial and quasi-judicial officers, including . . . prosecuting attorneys[.]" <u>Id</u>., at 15-16. Accordingly, all federal law claims against Defendants Petit and Lucas must be dismissed.

Just as the prosecutors enjoy absolutely immunity for the claims made in the operative complaint, their employee/agent, Anthony Popeck, "a duly-appointed investigative officer for former District Attorney John C. Petit," Dkt. [8] at 2, ¶5, enjoys the same immunity. <u>Davis v.</u>

Grusemeyer, 996 F.2d at 631.  In the Grusemeyer case, the plaintiff therein sued both the

prosecutor and the investigating officer who was named Grusemeyer.  The Grusemeyer court

explained that

> A separate question is whether defendant Grusemeyer, a police detective
> who allegedly assisted the defendant prosecutors with various investigative
> functions during the prosecution, is also entitled to absolute immunity for his role
> in the prosecution. Noting that the complaint does not specify the nature of
> Grusemeyer's alleged involvement in the prosecution, the district court decided
> that, even assuming Grusemeyer engaged in ongoing investigative activities at the
> behest of the prosecutors, he should, because acting as the prosecutors' agent,
> enjoy the same immunity from malicious prosecution claims as would a
> prosecutor. We agree.

Id. at 631 (footnote omitted).   The Court went onto explain that

> It may be conceivable that in certain circumstances some aspects of an
> investigator's work for a prosecutor, while carried out in connection with a
> criminal prosecution, would have so attenuated a link to the prosecution that
> immunity should not attach; however, in the case at bar, the gravamen of the §
> 1983 allegation is malicious prosecution. Therefore, only that conduct of
> defendant Grusemeyer that is related to the pursuit of the claimed malicious
> prosecution is relevant to the question whether he is entitled to share in the
> absolute immunity that cloaks defendants Gurak and Waldron. Plaintiff relies on
> no other conduct. Accordingly, the district court was correct in finding
> Grusemeyer immune from suit under § 1983.

Id., at 632 (footnotes omitted).  What the court stated in Grusemeyer applies equally here, the

gravamen of the operative complaint is malicious prosecution.  Dkt. [8] at 4, ¶ 18 ("Defendants

Petit, Mc Elhaney, Leary, Popeck, and others manufactured evidence that falsely implicate

Plaintiff as the perpetrator of these crimes.  This malicious prosecution included, but was not

limited to, unlawfully manipulating multiple witnesses to falsely implicate plaintiff by means of

improper suggestiveness and outright coercion.").  Hence, as in Grusemeyer, so also here,

Defendant Popeck enjoys a derivative absolute prosecutorial immunity and therefore, all federal law claims against him must be dismissed.

In like manner, Defendants McElhaney and Leary are entitled to derivative absolute prosecutorial immunity pursuant to the holding of Grusemeyer.  The Grusemeyer court explained that

> Davis puts stock in the fact that Grusemeyer is not an "investigator" for the New Jersey Attorney General's Office but a "Detective" in the New Jersey State Police. "The Supreme Court has outlined a 'functional' approach to immunity issues," Schrob v. Catterson, 948 F.2d 1402, 1209 (3d Cir.1991) (quoting Burns, 500 U.S. at ----, 111 S.Ct. at 1939), and it is inconsistent with this approach to treat as dispositive the formal label of the person performing the act, Imbler, 424 U.S. at 430; Schrob, 948 F.2d at 1409; Taylor, 640 F.2d at 452. We fail to see why a police officer, insofar as that officer is performing the functions of an investigator for a prosecuting attorney during an ongoing prosecution, should enjoy a lesser immunity than a non-police investigator simply by virtue of title. Similarly, it does not affect our analysis whether a person performing prosecution-related investigation is on the payroll of the State Attorney General, so long as that person is working at the direction of a prosecuting attorney when performing the investigation.

Id., at 632, n.32.  Here, the operative complaint reveals liability against Defendants State Troopers McElhaney and Leary premised solely on their roles in investigating and arresting Plaintiff on the two murders and the November 9, 2005 arrest for the second crime to which Plaintiff pleaded guilty and that all these activities by Defendants McElhaney and Leary were done at the direction of the prosecutors.  See, e.g., Dkt. [8] at 6, ¶ 32 ("At all times relevant to this Complaint, Defendants Mc Elhaney, Leary, Popeck . . . were acting under the direction and control of Defendant former District Attorney Petit."); id., at 4, ¶ 18 ("Defendants Petit, McElhaney, Leary, Popeck, and others manufactured evidence that falsely implicate Plaintiff as the perpetrator of these [murder] crimes.  This malicious prosecution included, but was not

limited to, unlawfully manipulating multiple witnesses to falsely implicate plaintiff by means of improper suggestiveness and outright coercion."); id, at ¶ 20 ("When Plaintiff attempted to vacate the Washington County Correctional Facility, he was approached by Defendant McElhaney and Defendant Leary and arrested for other charges that stemmed from false testimony of one of the witnesses during the Double Homicide Trial.").   Hence, Defendants McElhaney and Leary are entitled to derivative absolute prosecutorial immunity.  The federal claims against them should be dismissed for failure to state a claim upon which relief can be granted.

Just as the two prosecutor-defendants enjoy absolute prosecutorial immunity under federal law for the federal law claims, they enjoy a similar absolute prosecutorial immunity under the common law of Pennsylvania for Plaintiff's claims made under state tort law.  See, e.g., Durham v. McElynn, 772 A.2d 68 (Pa. 2001).  In Durham, the Pennsylvania Supreme Court considered whether an assistant district attorney was entitled to absolute immunity after the he allegedly allowed perjured testimony to be used at a preliminary hearing and trial.  Describing the scope of common law immunity, the court stated, "absolute privilege ... is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority...."  Id., 565 Pa. 163, 772 A.2d 68, 69 (2001).  Under the rule of Durham, Defendants Petit and Lucas are entitled to immunity from the all of the state law claims Plaintiff makes.  Gleeson v. Robson, No. 3:CV-02-1747, 3:CV-03-0552, 2005 WL 1210948, at *34 (M.D.Pa. May 6, 2005)("In the present case, Dr. Gleeson argues that Mr. Prevoznik should be

liable under malicious prosecution, abuse of process, and intentional infliction of emotional distress because he helped draft the affidavit of probable cause and criminal complaint that lead to Plaintiff's arrest and malicious prosecution. Under *Durham*, Mr. Prevoznik [i.e., the Assistant District Attorney] is entitled to absolute immunity from all three state law claims because the drafting of the arrest warrant and criminal complaint were taken in the course of his duties as a prosecutor."), aff'd sub nom., Gleeson v. Prevoznik, 190 Fed.Appx. 165 (3d Cir. 2006).

Accordingly, because all state and federal law claims against Defendants Petit and Lucas should be dismissed for failure to state a claim upon which relief can be granted, Petit and Lucas should be dismissed as party defendants in this case.

As for Defendants McElhaney and Leary, they enjoy sovereign immunity from the state law claims of abuse of process, malicious prosecution, false arrest and intentional infliction of emotional distress. See, e.g., Pickering v. Sacavage, 642 A.2d 555, 560 (Pa.Cmwlth. 1994) wherein the Court explained:

> In La Frankie, a state trooper arrested plaintiff for unlawful use of a credit card and forgery. The district attorney entered a nolle prosequi to the charges. Subsequently, plaintiff and his parents brought suit against, inter alia, the state trooper, and alleged abuse of legal process, malicious prosecution, and false arrest. After a jury trial, the jury found the state trooper guilty of abuse of process. The state trooper moved for judgment notwithstanding the verdict, and asserted the affirmative defenses of sovereign and official immunity. The trial court granted the state trooper's motion, and our court sitting en banc affirmed this decision. We held that since the state trooper was acting within the scope of his duties, he was protected by sovereign immunity. . . .

If, as the State Court found in Pickering v. Sacavage, that actions of abuse of process, malicious prosecution and false arrest come within the "scope of duties" as is required for sovereign

immunity to apply, then the same result must obtain herein, Defendants McElhaney and Leary are protected by state statutory sovereign immunity.

Likewise, the claim of intentional infliction of emotional distress must be dismissed against Defendants McElhaney and Leary. See, e.g., Holt v. Northewst Pa. Training Pshp. Consortium, 694 A.2d 1134, 1139-40 n. (Pa. Cmwlth. 1997)("In order to maintain an action against a commonwealth party or a local agency, a plaintiff must establish that he or she has a statutory cause of action or that it was one maintainable at common law. At common law, the tort of intentional infliction of emotional distress, which Holt has alleged against the Commonwealth defendants, the NPTPC and the Commissioners, did not exist.")(citations omitted); id. at 1140 ("sovereign immunity protects a Commonwealth employee acting within the scope of his or her employment from liability, even for intentional acts which cause emotional distress."). Hence, all state law claims against the Defendants McElhaney and Leary must be dismissed. Because all federal law claims and all state law claims against Defendants McElhaney and Leary should be dismissed, they should be dismissed as party defendants in this case.

### 2. Pennsylvania State Police

Plaintiff sued the "Pennsylvania State Police, Washington County Troop B," which we shall treat as being the equivalent of the Pennsylvania State Police, because it does not appear to this court that the "Washington County Troop B of the State Police" is a legal entity capable of being sued. Just as all state law claims against Defendants McElhaney and Leary should be dismissed based on state statutory sovereign immunity, all state law claims against the Pennsylvania State Police must be dismissed. Schroeck v. Pennsylvania State Police, 362 A.2d

486 (Pa.Cmwlth. 1976)( action alleging, inter alia, invasion of privacy, false arrest and malicious prosecution had to be dismissed as against state police, which is instrumentality of Commonwealth and entitled to protection of sovereign immunity).

Similarly, all federal law claims against the Pennsylvania State Police, should be dismissed because the Pennsylvania State Police, as an arm of the Commonwealth of Pennsylvania, is entitled to Eleventh Amendment Immunity.  See, e.g., Doe v. Evanko, NO. CIV. A. 00-5660, 2001 WL 283170, at *2 (E.D. Pa. March 22, 2001); Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement, 108 F.Supp.2d 460, 465 (E.D. Pa. 2000)(finding that Pennsylvania State Police, an agency of the Commonwealth, is an alter ego of the State for purposes of the Eleventh Amendment); Durham v. United States, 9 F.Supp.2d 503, 506 (M.D. Pa. 1998).  Given that all state and federal law claims against the Pennsylvania State Police should be dismissed, the Pennsylvania State police should be dismissed as a party defendant from this suit.

### 3.  The County Defendants

Plaintiff names as one of the Defendants, the Washington County Correctional Facility. However, the WCCF does not possess the capacity to be sued.  "Capacity" refers to party's ability to sue and be sued in federal court.  Koog v. United States, 852 F. Supp. 1376 (W.D. Tex. 1994), judgment rev'd on other grounds, 79 F.3d 452 (5th Cir. 1996) (defining "capacity" with respect to federal courts);  Ward v. Baldwin Lima Hamilton Corp., C. A. No. 84-0232, 1985 WL 2830, at *1 (E.D. Pa. Sept. 30, 1985)("'Capacity' refers to the ability of an entity to be brought into, or to use, the courts of a forum.").   This court concludes that the WCCF, i.e., the County Jail of Washington County, has no capacity to be sued.  Owens v. Scott County Jail, 328 F.3d 1026,

1027 (8th Cir. 2003)("county jails are not legal entities amenable to suit."); Russell v. Mobile County Sheriff, No. Civ. A. 00-0410-CB-C, 2000 WL 1848470, at *2 (S.D.Ala. Nov. 20, 2000) (finding that the Mobile County Jail is not a suable entity); Marsden v. Federal Bureau of Prisons, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (finding that the jail is not an entity amenable to suit); House v. Cook County Dept. of Corrections, No. 98 C 788, 1998 WL 89095, at *2 (N.D.Ill. Feb. 13, 1998) (same); May v. North County Detention Facility, No. C 93-1180 BAC, 1993 WL 300290, at *2 (N.D.Cal. July 21, 1993) (same). Accordingly, the WCCF should be dismissed as a party defendant.

The same reasoning applies equally to the Defendant named as the "Washington County Office of the District Attorney." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997) ("the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability"); Burkes v. Tranquilli, NO. CIV.A. 08-474, 2008 WL 2682606, at *5 (W.D.Pa. July 2, 2008) ("Dismissal of the Office of the District Attorney, also named as a Defendant, is proper on the grounds that the Amended Complaint fails to state a claim because the Office of the District Attorney lacks the capacity to be sued.")(citing Jacobs v. Port Neches Police Department, 915 F.Supp. 842, 844 (E.D.Tex. 1996) (holding that county district attorney's office is not legal entity capable of being sued)); Laughman v. Com. of Pa., NO. 1:05-CV-1033, 2006 WL 709222, at *4 n.7 (M.D.Pa. March 17, 2006).

The only three defendants who remain, then, are Washington County and Defendant Joseph Pelzer, the Washington County Correctional Facility Warden, and Tim Warco, the Washington County Coroner.

The only specific allegations against Defendant Warco, the Washington Coroner, appear in the introductory portion of the complaint and simply set forth who Defendant Warco is and where he is employed. Dkt. [8] at 2, ¶ 6. Never again is Defendant Warco specifically mentioned in the complaint. Of course there are conclusory allegations, such as Defendant Petit "maliciously conspired with all other above listed defendants to prosecute, convict and execute Plaintiff for a heinous crime he did not commit." Dkt. 8 at 4, ¶ 17. Such allegations concerning "all the defendants" or similar allegations will be liberally construed to include Defendant Warco. Nevertheless, such conclusory allegations are insufficient under Twombly to give the fair notice required under Fed.R.Civ.P. Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)("we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. See Airborne Beepers & Video, Inc., v. AT & T Mobility L.L. C., 499 F.3d 663, 667 (7th Cir. 2007). Put another way, in light of Twombly, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."); In re Tower Air, Inc., 416 F.3d 229, 237 (3d Cir. 2005) ("A plaintiff should plead basic facts, such as they are, for those are 'the grounds' upon which the plaintiff's claim rests. Even at the pleading stage, a defendant deserves fair notice of the general factual background for the plaintiff's claims."). Moreover, given the nature of the claims made of conspiracy and malicious prosecution and considering the nature of the role of a coroner in homicide cases, and in light of the fact that Plaintiff amended his complaint once already, we conclude that further

amendment would be futile. Hence, the federal law claims against the coroner, Defendant Warco, should be dismissed for failure to state a claim.

As to any state law claims against the Coroner, because all federal law claims should be dismissed against all defendants, it is recommended that the District Court decline to exercise supplemental jurisdiction over the state law claims.  See, e.g., Boneburger v. Plymouth Township, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'") (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)). See also 28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction...."  Here, the appropriate considerations do not provide an affirmative justification for retaining supplemental jurisdiction and deciding matters of state law.

Similarly, the allegations against Warden Pelzer are conclusory and vague and fail to state a claim upon which relief can be granted under the Twombly standard.  See, e.g., Dkt. [8] at 4, ¶ 19.  As the Court in Twombly, 127 S.Ct. at 1964-65, explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Here, this is all that Plaintiff provides and such fails to state a claim under Twombly.  Accordingly all of the federal law claims against Warden Pelzer should be dismissed.  The same reasoning applies equally to Washington County.  Hence, all federal law claims against the County should be dismissed for

failure to state a claim.[4]  All state law claims must be dismissed against the County because all of

the state law claims involve actual malice or willful misconduct for which a political subdivision

such as the County enjoys immunity.[5]  See, e.g., Overstreet v. Borough of Yeadon, 475 A.2d 803

(Pa.Super. 1984)(finding malicious prosecution claim against borough barred by PSTCA).  In

addition, Plaintiff's allegations make clear that his false imprisonment claims and malicious

abuse of process claims come within the bar of the PSTCA because they involved either actual

malice or willful misconduct.  Dkt. [8] at 7, ¶ 40 (false arrest claim asserting that Defendants

presented false information and fabricated evidence) ; Id., at ¶ 42 (abuse of process claim

---

[4]  Because it is being recommended that all federal law claims against all defendants including Defendant
Pelzer be dismissed, the Court recommends declining to exercise supplemental jurisdiction over the state
law claims against Defendant Pelzer.

[5]  The Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8542 provides in relevant part as follows:

> A local agency shall be liable for damages on account of an injury to a person or
> property within the limits set forth in this subchapter if both of the following conditions
> are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1) The damages would be recoverable under common law or a statute creating a cause
> of action if the injury were caused by a person not having available a defense under
> section 8541 (relating to governmental immunity generally) or section 8546 (relating to
> defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee
> thereof acting within the scope of his office or duties with respect to one of the
> categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not
> include acts or conduct which constitutes a crime, actual fraud, actual malice or willful
> misconduct.

Whereas political subdivisions retain immunity for all torts except some negligent ones, employees of
political subdivisions do not enjoy immunity for intentional torts such as malicious prosecution and the
other state law torts which were alleged by Plaintiff in the operative complaint. See, e.g., Steiner by
Steiner v. City of Pittsburgh, 509 A.2d 1368, 1370 (Pa.Cmwlth. 1986)("While [the PSTCA] indeed
waives four specific immunities for willful misconduct, each of the waived immunities exposes
municipal employees to personal liability without dissolving the shield of general immunity retained by
municipalities.")(footnote and internal quotations omitted).

wherein Plaintiff alleged that "Defendants maliciously used a 'legal process' to accomplish some ulterior purpose").[6]

### 4. __Heck__ Bar

To the extent that Plaintiff seeks to make any federal law claims against any of the Defendants for violations of his federal rights based upon any actions taken in connection with the November 9, 2005 allegedly false arrest and consequent April 2007 conviction pursuant to the plea agreement, such claims must be dismissed as being __Heck__ barred.   What the Court of Appeals stated in __Wells v. King__, 232 Fed.Appx. 148, 149 (3d Cir. 2007) applies equally here:

> Though Wells cites a laundry list of constitutional rights, the majority of Wells' claims clearly pertain to-and challenge-his conviction, and accordingly, may not be raised at this point. Significantly, Wells' complaint also includes accusations that he was falsely/unlawfully arrested, and that he was falsely imprisoned. Because the success of such claims may not necessarily invalidate a conviction, the claims are not necessarily subject to the __Heck__ bar. Compare __Montgomery v. De Simone__, 159 F.3d 120, 126 n. 5 (3d Cir. 1998) ("claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in __Heck__ which necessarily implicate the validity of a conviction or sentence."), __with Gibson v. Superintendent__, 411 F.3d 427, 451-52 (3d Cir. 2005)

---

[6] It is true that the attorneys representing the County Defendants raise a number of defenses, including the statute of limitations, as to many of the federal and state law claims.  However, because Plaintiff claims in his response that he is entitled to tolling, it is not clear to this court that the County Defendants' statute of limitations defense necessarily carries the day, at least not in the present procedural posture of a motion to dismiss, simply because it is not clear from the face of the complaint that the statute of limitations bars this action.  Secretary of Labor v. Labbe, __ Fed.Appx. __, __, 2008 WL 4787133, at *2 (11th Cir. 2008)("While it is true that we have dismissed complaints under Rule 12(b)(6) on statute of limitations grounds, we have made it clear that dismissal on such grounds is 'appropriate *only* if it is apparent from the face of the complaint that the claim is time-barred' and '*only* if it appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute.'")(quoting, Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 n.13 (11th Cir. 2005))(emphasis added by the Labbe court). This uncertainty as to the bar of the statute of limitations is compounded by the fact that the County Defendants fail to utilize the prisoner mailbox rule in calculating the date Plaintiff filed his complaint. Dkt. [31] at 6, ¶ 22 (asserting that the complaint was filed on November 13, 2007, when in fact pursuant to the prisoner mail box rule, the complaint would be deemed filed as of November 8, the date of the signing of the complaint, which, in this case could prove dispositive, at least with respect to some of Plaintiff's claims, especially the malicious prosecution claim based upon the murder charges).

(finding <u>Heck</u> rule applies because only evidence supporting conviction was found pursuant to constitutional violation that was subject of plaintiff's § 1983 claim). However, review of the complaint reveals that the actual claim underlying these bare assertions is the challenge to his conviction: that every aspect of Wells' prosecution and conviction-including his arrest and imprisonment-were unlawful precisely because the Assistant District Attorney was biased against him, and maliciously prosecuted him.

In like manner, "underlying [Plaintiff's] bare assertions is the challenge to his conviction: that every aspect of [Plaintiff's] prosecution and conviction – including his arrest and imprisonment – were precisely because" all of the Defendants had conspired against him and maliciously prosecuted him. Hence, the result herein must be the result in <u>Wells v. King</u>, i.e., the federal claims relating to the November 9, 2005 allegedly false arrest and the ensuing prosecution, leading to Plaintiff's April 2007 plea agreement and conviction, must be dismissed for failure to state a claim upon which relief can be granted.

In addition, just as in <u>Wells v. King</u>, so too here, "[i]deally, [we] would have made an explicit determination with regard to each claim whether it - if successful - would imply the invalidity of the conviction or sentence. <u>See</u> <u>Gibson v. Superintendent</u>, 411 F.3d 427, 447-49 (3d Cir.2005). However, as the imprecise and sweeping nature of [Plaintiff's] claims would have made such an inquiry difficult" at best, impossible at worst, such an inquiry can be forgone especially given that the Defendants raised the <u>Heck</u> bar in their motions to dismiss, Dkt. Nos. [28] at 3 to 5; [31] at 2 to 3, and Plaintiff did not offer any counter argument as to why the <u>Heck</u> bar does not apply. <u>Wells v. King</u>, 232 Fed.Appx. at 149 n.2.

## **CONCLUSION**

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in

accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections may constitute waiver of any appellate rights.

Respectfully submitted,

/s/  Amy Reynolds Hay
United States Magistrate Judge

Dated:  2 December, 2008

cc:     Hon. Terrence F. McVerry
        United States District Judge

        Gerald Allen Gregg
        670 Cleveland Road
        Washington, PA 15501

        Counsel of Record via CM-ECF